UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

LISA TRIVETT                                                                              PLAINTIFF

v.                                                     No. 5:22-cv-130-BJB

JAMES BRUCE                                                     DEFENDANT

\* \* \* \* \*

## ORDER

       Lisa Trivett borrowed money from Mariner Finance under a "Note, Security Agreement & Arbitration Agreement." *See* DN 1-1. The first two pages set forth the financial terms; the next (and final) two pages set forth the arbitration agreement. The arbitration provision begins: "You or we may elect to have any Claim … resolved by neutral binding arbitration." *Id.* at 3. It broadly defines "you" and "we" to include Trivett's and Mariner's "subsidiaries, affiliates, agents, employers, successors, and assigns." *Id.*

       When Trivett defaulted on that loan, James Bruce represented Mariner in filing a lawsuit in state court to collect the unpaid money. DN 1-2. That lawsuit resulted in a default judgment that the judge later vacated in light of an agreed order filed by the parties. After the state-court litigation with Mariner ended, Trivett sued Bruce in this Court, claiming that his filing of litigation papers on behalf of Mariner after Trivett defaulted on the loan agreement violated the Fair Debt Collection Practices Act.

       Bruce moved to compel arbitration over Trivett's objection that Bruce isn't covered by the arbitration provision. *See* DN 11; DN 18. Bruce is correct: the agreement unambiguously states that the parties' "agents" may resolve any claim through arbitration. Bruce—as Mariner's attorney in state-court litigation connected with collection on the Mariner contract at issue—acted as Mariner's "agent" under the ordinary meaning of that term. *See, e.g., Comm'r v. Banks*, 543 U.S. 426, 436 (2005) (attorney-client relationship "is a quintessential principal-agent relationship"). Given Kentucky's caselaw favoring the enforceability of arbitration provisions, *see, e.g., Grimes v. GHSW Enterprises, LLC*, 556 S.W.3d 576, 581 (Ky. 2018), and adhering to unambiguous terms of contracts, *see, e.g., Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003), Trivett's agreement with Mariner calls for this dispute to be arbitrated rather than litigated.

       Trivett resists this straightforward application of contract and arbitration law by urging the Court to restrict the meaning of "agent" in the loan agreement based

on a separate representation agreement between Mariner and Bruce. That agreement, apparently uncovered during discovery in this case and previously unknown to Trivett, states that "[u]nder no circumstances is the relationship among [Bruce and Mariner] to be construed as that of principal/agent." *See* DN 18-1 at 8. Because the Trivett-Mariner contract is integrated and unambiguous, this separate writing amounts to extrinsic evidence the parties may not rely on to limit the scope of the former agreement. *See, e.g., Mt. Holly Nursing Center v. Crowdus*, 281 S.W.3d 809, 815 (Ky. Ct. App. 2008). Regardless of how Mariner and Bruce characterized their relationship in a different instrument, Bruce plainly acted as Mariner's "agent" when he filed a debt-collection suit against Trivett in Livingston Circuit Court. Nothing indicates that Trivett could enforce a representation agreement to which she is not a party or intended beneficiary. (The Mariner note, in telling contrast, clearly anticipates enforcement by any of Mariner's or Trivett's affiliates or agents who might sue or be sued under that agreement.) Nothing aside from this extrinsic evidence, as Trivett's counsel conceded at argument, connects the representation and loan agreements or otherwise alters the plain meaning of "agent."

The Court therefore grants Bruce's motion to compel arbitration (DN 11), denies as moot the motion to stay discovery (DN 16), and dismisses the case.

Benjamin Beaton, District Judge
United States District Court

May 25, 2023